Richard STAPLES

v.

**BANGOR HYDRO–ELECTRIC COMPANY.**

Supreme Judicial Court of Maine.

Argued June 8, 1989.
Decided July 17, 1989.

Joseph T. Walsh, Jr. (orally), Bangor, for plaintiff.

Bruce Mallonee (orally), Rudman & Winchell, Bangor, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

WATHEN, Justice.

Plaintiff Richard Staples appeals from summary judgment granted in the Superior Court (Penobscot County, *Chandler, J.*) in favor of defendant Bangor Hydro–Electric Company (Hydro). Plaintiff filed a multi-count complaint alleging wrongful discharge, deprivation of due process, defamation and intentional infliction of emotional distress. By separate count he sought punitive damages for his tort claims. The Superior Court granted summary judgment against him on all counts. We vacate summary judgment on the defamation and punitive damage counts, but affirm the remainder of the judgment.

Plaintiff's deposition testimony, as considered for purposes of summary judgment, may be summarized as follows: Plaintiff was hired by Hydro in March, 1984 as a commercial energy specialist. His initial job responsibility was to develop a commercial energy program. Over the next two years he was twice promoted and given a pay raise. In January of 1986, at the time of his second promotion, the department he had been working in was consolidated with two others and Avery Caldwell was brought in as a new director. Plaintiff had become the micro-computer expert, and had been training other employees on the computers as well as working on other projects. Caldwell had asked him to prepare a thorough report on available software, and plaintiff understood that he was to give a progress report at the next staff meeting. As he was delivering his report, however, Caldwell jumped in and "barked" at him, told him to stop and to meet him in Caldwell's office after the staff meeting. At the ensuing meeting Caldwell was visibly upset. They talked

briefly about the report, and then at greater length about a memo distributed anonymously but written by plaintiff expressing staff grievances about Caldwell. During that conversation Caldwell informed plaintiff that if he had the authority to do so, he would fire him. Subsequently, plaintiff was in a car accident in a company car and was charged with operating under the influence. Although he was not disciplined, he was later told by Caldwell, that he was "wasting too much time" evaluating computer software, a criticism he felt was unfounded. At some point Caldwell instructed him to remove some software from the computers. He told Caldwell that he did not think that was a good idea, but Caldwell insisted and he did as he was told. In April 1986 Caldwell demoted him, but he did not complain because he had been negotiating for a different job in another department that he expected to get soon, and welcomed the opportunity to be out of the office for a little while. About a month later, however, he was called into Caldwell's office and told either to resign or be fired. Caldwell said Hydro had decided to terminate his employment because of the OUI and a late report, and because he was non-communicative and "not a positive team member." Caldwell also accused him of having erased computer files. He left Caldwell's office and immediately contacted another manager, Paul Leblanc, who told him that he was aware of what was going on and that he should take the weekend and think about it. Plaintiff met with Leblanc the following Tuesday and Leblanc confirmed that he was being fired because of the OUI and because his job performance was not up to par as well as because of the allegations that he erased computer files. Plaintiff chose to be fired, was given a severance check for $994, and left. He stated that it had been his understanding that he had a job with Hydro "so long as [he] did it well."

■ Plaintiff's wrongful discharge counts hinge on the question whether his employment was terminable at will. A contract of employment for an indefinite period is terminable at the will of either party unless the parties have "clearly stat[ed]

their intention" to restrict that common law rule. *Libby v. Calais Regional Hospital*, 554 A.2d 1181, 1182 (Me.1989). Here plaintiff presented no evidence of an express restriction on defendant's common law right to discharge him at will. Plaintiff's due process claim was similarly dispatched without error because defendant's act of termination does not constitute "state" action. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477, 484 (1974). (Whether the action of a regulated entity is "state" action depends on "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.") Accordingly, the Superior Court committed no error in granting summary judgment on the wrongful discharge counts and the due process claim.

■ Next, we conclude that the court correctly determined plaintiff's claim for intentional infliction of emotional distress. Even when viewed in the light most favorable to plaintiff, *Lidstone v. Green*, 469 A.2d 843, 845 (Me.1983), the evidence creates no genuine issue that Caldwell's conduct was so extreme and outrageous as to exceed " 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community.' " *Vicnire v. Ford Motor Credit Company*, 401 A.2d 148, 154 (Me.1979) (quoting *Restatement (Second) of Torts* § 46 comment d) (1965). Plaintiff argues that Caldwell humiliated him at staff meetings and demoted him without cause, but such evidence falls far short of the *Vicnire* standard and would not warrant submitting the case to the jury. *See Restatement (Second) of Torts* § 46 comment h.

■ We agree with plaintiff, however, that a genuine issue of material fact exists whether defendant, through its agents, committed slander *per se*. He testified that his superiors falsely accused him of erasing computer files. Because such an accusation relates to his profession, it could be actionable despite the absence of any special damages. *Saunders v. VanPelt,*

497 A.2d 1121, 1124–25 (Me.1985). (Defamatory words relating to "profession, occupation or official station" are slanderous *per se*). Accordingly, we vacate the summary judgment on the defamation count and on the separate count for punitive damages insofar as it relates to slander. The remaining issues raised by plaintiff are without merit and require no discussion.

The entry is:

Summary judgment entered on Counts 5 and 8 vacated. Remanded to Superior Court for further proceedings consistent with the opinion herein.

In all other respects, judgment affirmed.

All concurring.